1

2               UNITED STATES DISTRICT COURT

3              CENTRAL DISTRICT OF CALIFORNIA

4                    SOUTHERN DIVISION

5        THE HON. JAMES V. SELNA, JUDGE PRESIDING

6

INFOBLOX, INC.,                    )
7                                  )
                    Plaintiff,     )
8                                  )
            vs.                    ) NO. SACV 10-01962-JVS(MANx)
9                                  )
BLUECAT NETWORKS (USA), Inc., et )
10  al.,                           )
                                   )
11                  Defendants.    )
   _____)
12

13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS
                  SANTA ANA, CALIFORNIA
16

17              MONDAY, AUGUST 22, 2011

18

19

20

21

22      PAMELA COTTEN, CSR, RDR, Certificate No. 4497
                CERTIFIED REALTIME REPORTER
23             U.S. CONTRACT COURT REPORTER
                UNITED STATES DISTRICT COURT
24          411 WEST FOURTH STREET, SUITE 1-053
                SANTA ANA, CALIFORNIA  92701
25                 pcotten@earthlink.net

1

INFOBLOX, INC. v. BLUECAT NETWORKS   8/22/2011

```
 1    APPEARANCES:

 2

 3

 4

 5    FOR THE PLAINTIFF:

 6            FENWICK & WEST LLP
              BY:  MS. TERESA M. CORBIN
 7            12th Floor
              555 California Street
 8            San Francisco, California  94104
              (415) 875-2300
 9

10

11

12    FOR THE DEFENDANT:

13            ONE LLP
              BY:  WILLIAM J. O'BRIEN, ESQ.
14            Suite 250
              301 Arizona Avenue
15            Santa Monica, California  90401
              (310) 866-5158
16

17            ONE LLP
              BY:   JOSEPH "JOEY" LIU, ESQ.
18                  NATHANIEL DILGER, ESQ.
              Suite 1100
19            4000 MacArthur Boulevard
              Newport Beach, California  92660
20            (949) 502-2875

21

22

23

24

25
```

2

INFOBLOX, INC. v. BLUECAT NETWORKS   8/22/2011

```
 1                SANTA ANA, CALIFORNIA

 2               MONDAY, AUGUST 22, 2011

 3                    1:51 P.M.

 4          THE CLERK:  Item 13 SACV 10-01962-JVS Infoblox,

 5    Inc. versus BlueCat Networks, U.S.A., Inc., et al.  Counsel,

 6    please state your appearance.

 7          MR. O'BRIEN:  Good afternoon, your Honor.  William

 8    O'Brien of One LLP representing defendant and

 9    counterclaimant BlueCat, and with me are my colleagues Joey

10    Liu and Nathaniel Dilger.

11          THE COURT:  Good afternoon.

12          MS. CORBIN:  Good afternoon, your Honor.  Teresa

13    Corbin from Fenwick & West representing plaintiffs -- the

14    plaintiff Infoblox.

15          THE COURT:  Good afternoon.  I trust you have all

16    seen the tentative?

17          MR. O'BRIEN:  Yes, your Honor.

18          THE COURT:  Okay.  Ms. Corbin, would you like to

19    be heard?

20          MS. CORBIN:  Yes, please.

21          Your Honor, we are here today on the issue of

22    whether BlueCat's patent infringement claims, and those are

23    patents that are not related per se to the patents that

24    Infoblox has brought, should be added and tried together

25    with the Infoblox claims.
```

3

INFOBLOX, INC. v. BLUECAT NETWORKS   8/22/2011

1    Now, these claims that BlueCat is bringing,                    13:52:33

2  because they are unrelated per se, are permissive in nature

3  and not compulsory.  Those claims are compulsory in

4  Delaware, and obviously that court already has the venue

5  issue before it, but it is Infoblox's position that even if

6  the Court in Delaware were to decline taking jurisdiction of

7  that case or that the venue is not proper there, these

8  claims should not be tried together with the Infoblox

9  claims.  It is important to realize that --

10         THE COURT:  Can't I address that issue --

11         MS. CORBIN:  Yes.

12         THE COURT:  -- more intelligently down the line

13  when there's been some discovery, the pleadings are at

14  issue, and we can see on a fuller record whether those

15  claims ought to be tried together or whether these later

16  claims ought to be bifurcated?  We are just here on a

17  pleading motion today, motion for leave to file an amended

18  Answer and counterclaims.

19         MS. CORBIN:  Yes, your Honor.  Well, we -- perhaps

20  that would be appropriate, but we believe even having their

21  pleadings in this case is going to complicate our case and

22  slow our case down.

23         THE COURT:  Don't they get to try their case, too?

24         MS. CORBIN:  Absolutely.  They do.  And they, you

25  know, they have purchased this claim.

4

PAMELA COTTEN, CSR, RDR, CRR - U.S. CONTRACT COURT REPORTER

INFOBLOX, INC. v. BLUECAT NETWORKS   8/22/2011

1         THE COURT:  Right.                              13:53:49

2         MS. CORBIN:  I think we are looking at the future

3    of patent litigation where this becomes more and more

4    common, and we are not saying they don't have the right to

5    try that case.  It is just whether it should be added to our

6    case and slow down our case.  We have already experienced

7    significant delay and actually obstruction of discovery in

8    our case as a result of those claims, you know.  BlueCat was

9    insisting during the discovery in this case that everything

10   be mutual, even though at that point -- and we didn't have

11   any knowledge of these patent claims they were going to

12   acquire -- there were no claims asserted against us for

13   infringement.  They wouldn't give us the source code.  We

14   had discovery out there asking for all this technical

15   information that we actually need in order to decide which

16   terms the Court should be construing, among other things,

17   and they said they wouldn't give it to us unless all of it

18   was mutual, they wouldn't give it to us because a protective

19   order hadn't been entered.  On the other hand, we are

20   operating under the Northern District rules, pursuant to

21   your Honor's instruction, and those rules are clear that

22   that's not legitimate because there is an interim protective

23   order in place.  We have been forced to move to compel.  In

24   our case we actually produced the source code, the patentee,

25   before the other side, and all of this has delayed our case,

INFOBLOX, INC. v. BLUECAT NETWORKS   8/22/2011

1   and it will continue to delay our case if we are combining          13:55:03

2   these together, and it is that that Infoblox, in addition to

3   thinking that it is way too complex and prejudicial to

4   Infoblox for these cases to be going to trial together,

5   there is delay inherent just in having them in the same

6   case.

7            Clearly their discovery is going to be somewhat

8   overlapping, and, you know, this is something that's handled

9   all the time with just saying that anything produced in this

10  case can be deemed produced in the other case and

11  vice-versa, so I think that's not really an issue.  And I

12  don't see any other efficiencies, per se, of their case

13  being pled in the same case as ours, but I do see that it is

14  going to be fraught with more problems and delay for the

15  Infoblox case.

16           THE COURT:  Anything further?

17           MS. CORBIN:  Well, in the tentative -- all I would

18  say about the tentative is that the cases that were cited

19  really, I believe, do not support -- the Court didn't get to

20  the Rule 15 issue, which I think having addressed 16(b), it

21  still needs to address those 15 -- the Rule 15

22  considerations, and even as to Rule 16 what I would say is

23  they have not carried their burden on showing good cause.

24  The reason being the case here was filed in December, and --

25           THE COURT:  When did they acquire the patents that

6

1   they want to now assert?                                        13:56:25

2           MS. CORBIN:  The day before they notified us that

3   they wanted to add them to this case, but I'm saying that

4   that is the improper -- that's not the proper window to look

5   at.

6           THE COURT:  How can they assert a patent claim

7   when they don't own it?

8           MS. CORBIN:  No.  They can't.  But the question in

9   the cases, and Coleman particularly even makes this clear,

10  that when you are talking about good cause and the diligence

11  of the movement, the question is not could they have

12  asserted that claim before they acquired it, it is could

13  they reasonably have acquired -- if they intended to do

14  that, could they reasonably have done that earlier in time

15  to meet the Court's pleadings cutoff.

16          THE COURT:  So it's --

17          MS. CORBIN:  And my position is with just looking

18  at their own statements that they've put in their

19  declaration, clearly they could have.  This case was filed

20  in December.  They didn't even start looking -- even

21  thinking about it until the end of February.  They then

22  decided they did want to acquire some assertive -- patents

23  that they could assert.  They located those patents in

24  March, and they didn't start diligently trying to get their

25  financing in place until June right up against the deadline

7

1    when in fact -- and they do not say that the patents that

2    they are asserting here were not those ones they have

3    identified in March.  So I think even on that basis we see

4    that it was within their control, and they could have moved

5    that forward in a timely way but did not.  And then so we

6    would say on that basis there isn't good cause, but when you

7    get to undue delay, which is also a consideration under

8    Rule 15, there you look at it is two prongs.  It is that

9    same prong about whether they could have reasonably brought

10   that claim sooner and then, in addition, undue delay in the

11   discovery in the process of the case, in the trial date

12   particularly, and --

13          THE COURT:  So they -- let me see.  They filed the

14   motion diligently, but, in your view, they weren't diligent

15   enough in acquiring the patents.  Is that your position?

16          MS. CORBIN:  Yes.

17          THE COURT:  Now, under what rule do I base that

18   finding?

19          MS. CORBIN:  Well, that's what I'm saying.  When

20   we look at the good cause, the question is could they

21   reasonably have met it before, and my position is that

22   clearly if they had been diligent in acquiring that suit and

23   in trying to find their financing, they would have had it in

24   place in time to do -- and they knew what the pleading

25   deadline was, and these are permissive counterclaims, so it

13:57:29

8

INFOBLOX, INC. v. BLUECAT NETWORKS   8/22/2011

1   is not as if they are compulsory in any way.                    13:58:41

2          The other thing I would point out is all the

3   cases, whether we are talking about 13(e) or in this case

4   where they have asserted that they have a right to bring it

5   because we had amended our claims, although not in a way

6   that changed the nature or scope of our claims, even in

7   those cases, the court does look at this factor when there

8   are permissive claims about whether it is going to cause

9   undue delay or any prejudice, and our position is on both

10  accounts it definitely does.

11         THE COURT:  Thank you.

12         MR. O'BRIEN:  Your Honor, I guess new issues keep

13  popping up.  There was no question about our diligence in

14  the opposition papers.  There are certainly no facts to

15  support it.  It is awfully hard to get new investors in your

16  company to fund an acquisition when your major competitor is

17  trying to shut you down, and it was a pretty hard

18  negotiated, you know, transaction.  So, you know, I think

19  there's absolutely no basis to question BlueCat's diligence

20  at any stage.

21         You know, the issue about discovery -- you know,

22  the record was misstated in a number of ways.  Suffice to

23  say probably for today's purposes there's absolutely no

24  connection between anything that we have done in terms of

25  source code disputes and the acquisition of these patents.

                              9

1    We needed their source code for other reasons, such that          14:00:01

2    they claim that they are practicing these patents.  We asked

3    for it about the same time they asked for ours, and I don't

4    think your Honor needs to hear the whole story, but the --

5    you know, we really stand behind our conduct in connection

6    with, you know, the various positions that we have -- that

7    we have taken.

8              The -- I don't want to belabor it, your Honor, but

9    if your Honor has any questions, I'd be happy to address it.

10             THE COURT:  No.  Thank you.  Anything further?

11             MS. CORBIN:  No, your Honor.

12             THE COURT:  Well, the tentative is going to be the

13   order of the Court.  I believe that BlueCat acted timely

14   once it had its rights.  I don't think a delay in acquiring

15   the rights has any bearing on the analysis.  Once they had

16   them, then they were in a position to assert their claims.

17   To the extent that a trial of all these claims would be too

18   complicated, I think we can deal with that down the road.

19   In all likelihood, the Varquin (phonetic) constructions will

20   narrow this some, motions to practice may narrow it some,

21   and if indeed I need to bifurcate or set separate trials for

22   certain groups of patents, I think we ought to address that

23   on a full record and not here on the issue of whether

24   BlueCat ought to be allowed to amend its pleadings.  So the

25   tentative will be the order of the Court.  Thank you.

10

INFOBLOX, INC. v. BLUECAT NETWORKS   8/22/2011

1     MR. O'BRIEN:  May I raise one procedural issue?          14:01:24

2     THE COURT:  Yeah.

3     MR. O'BRIEN:  Your Honor, we went ahead and filed

4  our -- an Answer with counterclaims in response to the

5  Second Amended Complaint, and Infoblox filed a motion to

6  dismiss, which is basically the flip side of its opposition

7  to this motion.  Our opposition to the motion to dismiss is

8  due today, and it is set for hearing on September 12th.

9  Going forward with briefing of, you know, kind of the other

10  side of the coin seems a bit wasteful and redundant, your

11  Honor.

12     THE COURT:  Well, not clear to me that that's so.

13  At worst, I think what you are telling me is you have

14  already addressed some of the arguments you may need to

15  address again.

16     MR. O'BRIEN:  That's certainly true, your Honor.

17     THE COURT:  And, therefore, you should be more

18  efficient in doing your response.

19     MR. O'BRIEN:  Okay.  We will file our opposition,

20  then.

21     THE COURT:  Is your opposition due today?

22     MR. O'BRIEN:  Yes.

23     THE COURT:  Is there issue with that?  Can you get

24  it in today?

25     MR. O'BRIEN:  We can.  We will obviously want to

11

INFOBLOX, INC. v. BLUECAT NETWORKS   8/22/2011

1   note today's ruling, but we can do that, your Honor.                14:02:27

2            THE COURT:  Okay.

3            MS. CORBIN:  I'm sorry, your Honor, I have a few

4   more just procedural questions.

5            THE COURT:  Sure.

6            MS. CORBIN:  I guess one thing Infoblox would ask,

7   since we are having that other hearing on the 12th, if we

8   would stay the formality of their Complaint being at issue.

9   We also have -- you had ordered us in the tentative to get

10  together to talk about scheduling if the cases were to be

11  combined.  In the interim, we actually have deadlines coming

12  up on Monday in the Joint Claim Construction Statement.

13           THE COURT:  I signed the order that you put in.

14           MS. CORBIN:  Right.  But it seems to me that if

15  these cases are all together, those dates are going to move

16  and that that should be part of what we are talking about.

17           THE COURT:  Well, I think you ought to sit down

18  and have some discussion.  If we need to adjust the schedule

19  in light of the Court's ruling today, I think you ought to

20  sit down and have a discussion.

21           MS. CORBIN:  The other thing also is that, you

22  know, for part of the Joint Claim Construction -- I'm sorry,

23  the Joint Case Management Conference Statement, in light of

24  the four cases being the totality of what was at issue, we

25  had come to some accommodation about what changes to the

                              12

1    federal rules there should be in the way of discovery in          14:03:34

2    terms of hours for deposition and so on, so that's another

3    thing that if it is not going to be prejudicial to Infoblox,

4    we need additional discussion of those things to accommodate

5    their claims.

6              THE COURT:  Why don't we use the September 12th

7    hearing as an additional scheduling conference, and why

8    don't you put in a Rule 26 report in light of the way the

9    case is presently postured.

10             MS. CORBIN:  Okay.  And can I assume that the

11   current dates that are about claim construction are off

12   calendar, then?

13             THE COURT:  Well, the -- I signed the order

14   continuing for one week --

15             MS. CORBIN:  Right.

16             THE COURT:  -- the exchange of preliminary

17   contentions, and the form of order I signed was the

18   defendant's order, and I modified it to say upon application

19   to the court and a showing of good cause, you can add or

20   change your terms on either side.

21             MS. CORBIN:  Okay.

22             MR. O'BRIEN:  We will be happy to work with

23   Infoblox about making further proposals to your Honor.

24             THE COURT:  Okay.

25             MS. CORBIN:  Thank you.

                              13

INFOBLOX, INC. v. BLUECAT NETWORKS   8/22/2011

1        MR. O'BRIEN:  Thank you.                          14:04:40

2        THE CLERK:  There is one other issue.

3        THE COURT:  What's that?

4        THE CLERK:  That is when they filed that amended

5    Answer and counterclaims, it was electronically filed so

6    their counterclaims don't come on the docket anywhere

7    because they have to be manually filed.

8        THE COURT:  Okay.  You need to manually file your

9    amended Answer and counterclaims as well as electronically.

10   Can you get that done this week?

11       THE CLERK:  It won't get on the docket.  They

12   can't respond to the counterclaims.

13       MR. O'BRIEN:  Oh.  Yeah.  We are sorry, your

14   Honor.  We did just only e-file, so we should at this time

15   manually file?

16       THE COURT:  Yes, please.

17       THE CLERK:  For future reference, you don't e-file

18   it, you just manually file.

19       MR. O'BRIEN:  Yeah.  I'm sorry.

20       THE CLERK:  That's okay.

21       MR. O'BRIEN:  That, for some reason, has trouble

22   registering.  I'll pay more close attention to that.  Thank

23   you.

24       MS. CORBIN:  Thank you.

25        (The proceeding concluded at 2:05 P.M.)

                          14

INFOBLOX, INC. v. BLUECAT NETWORKS   8/22/2011

1

2

3

4                    REPORTER'S CERTIFICATE

5

6        I, Pamela Cotten, a Certified Shorthand Reporter,

7   do hereby certify that the foregoing proceeding was written

8   by me in Stenotype and transcribed into typewriting and that

9   the foregoing is a true and correct copy of my shorthand

10   notes thereof.

11

12                        /s/PAMELA COTTEN, CSR, RDR, CRR

13                    _____

14

15   Dated:_____

16

17

18

19

20

21

22

23

24

25

                           15

PAMELA COTTEN, CSR, RDR, CRR – U.S. CONTRACT COURT REPORTER